CASE 29—PETITION ORDINARY—FEBRUARY 19.

## Clayton v. City of Henderson, Etc.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. REPEAL OF STATUTE—MUNICIPAL CORPORATIONS—NUISANCES.—The provision of the Kentucky Statute, sec. 3909, that it shall be unlawful to locate, or maintain, any pest house within the limits of any incorporated city or town, or within one mile of the boundary line thereof, and that any officer of such city or town, or other person, who shall violate the same shall be liable in damages, is not repealed by the provisions of sec. 3290 of the Kentucky Statutes, being a part of the charter of cities of third class, authorizing the common council of such cities to prevent the introduction of contagious diseases therein, and to make quarantine laws for that purpose, and to establish and erect hospitals, and to acquire land for that purpose, either within or beyond the boundaries of the city.

2. NUISANCES—STATUTORY AND COMMON LAW LIABILITY.—Although

sec. 3909 does not make the municipal corporation liable, the
common law liability remains, if it establishes a nuisance which
inflicts special damage upon an indvidual, and facts being stated
in the pleading which show the existence of a nuisance and the
damage resulting therefrom, a cause of action was stated against
the city although the word "nuisance" was not used therein.

3. MUNICIPALITIES—ULTRA VIRES.—A municipality is liable for torts
committed by its officers acting under its authority in a matter
within the scope of its corporate powers, but in regard to which
its powers have been abused; and the acts of its officers are not
*ultra vires* in the sense that they are not within the power, or
authority, of the corporation.

4. LEGISLATIVE OFFICERS—STATUTORY CONSTRUCTION.—The provis-
ions of sec. 3909, prohibiting the location of a pest house in or
near, a city, and providing that any officer of any such city who
should violate the same should be liable, applies only to executive
and ministerial officers of such cities, and not to legislative
officers thereof.

5. SAME.—The surety of the keeper of the pest house is not liable
under that statute for aiding or abetting in the establishment or
maintenance of a pest house within the forbidden limits.

6. MISJOINDER OF ACTIONS.—A cause of action under the common
law against one party for compensatory damages can not be
properly joined with an action under a statute against another
party for punitive damages, although both causes of action arise
out of the same transaction.

S. B. & R. D. VANCE AND MONTGOMERY MERRITT FOR APPEL-
LANT.

1. Affirmative statutes of a general nature do not repeal by implica-
tion charters and special acts passed for the benefit of particular
municipalities, unless the purpose to do so clearly appears; and
such parts of charters should be read and construed in the light
of the general legislation and policy of the State, and of the
object of the legislation. Dillon on Municipal Corporations, 4th
ed., vol. 2, sec. 87.

2. While it is true the act itself only provides a specific penalty, or
liability, as to officers of municipalities, yet a municipal corpora-
tion, independent of the statute, is answerable in damages to any
person injured by its officers in enforcing a void ordinance or

by-law. McGraw v. Town of Marion, 17 Ky. Law Rep.; Haag v. Commissioners Vanderburgh County, 28 A. R., 654; Wood on Nuisances, page 68, sec. 66.

CLAY & CLAY FOR APPELLEES EXCEPT ATKINSON AND BUCHOLZ.

1. The charter for cities of the third class was designed to regulate by one general system the entire government of cities of that class, and to repeal all detached and varying enactments. Endlich on Interpretation of Statutes, sec. 231.

2. Under the general term "hospital" there is included pest houses, or places for the treatment of smallpox. Am. & Eng. Enc. of Law, vol. 9, page 771 and note; Richmond v. Supervisors (Va.), 18 Am. & Eng. Corporation Cases, 520.

3. Section 3909, even if in force, does not make the municipality liable for the erection of a pest house within the forbidden limits, but only its officers.

4. Acts *ultra vires* though done under color of office impose no corporate liability; and the corporation is bound by the acts of its officers only when acting within the charter, or scope of their general powers. 1st Dillon on Municipal Corporation, sections 89 and 91, and note; Willard v. Kellingwort, 8 Conn., 247; Barltmon v. Eschback, 18 Md., 276; State v. Kirkley, 29 Md., 85; Howell v. Buffalo, 15 N. Y., 363; 2d Dillon on Municipal Corporations, sec. 969.

DUDLEY & FITTS FOR APPELLEE BUCHOLZ.

1. When two acts are not in express terms repugnant, and the latter covers the whole subject matter of the earlier, and plainly shows it was intended as a substitute for it, it will operate as a repeal thereof, although all the provisions of the two may not be repugnant. Am. & Eng. Ency. of Law, vol. 23, page 485; Gorman v. Luckett, 6 B. M., 154; Rogers v. Walrous, 8 Tex., 62, (58 Am. Decisions, 100); Bartlett v. King, 12 Mass., 536, (7 Am. Decisions, 99).

2. Provisions of the former law not contained in the latter will be presumed to have been intentionally omitted. *In re* Weylock, 3 N. Y. Sup., 890.

JUDGE DURELLE DELIVERED THE OPINION OF THE COURT.

Clayton v. City of Henderson, Etc.

By an act adopted in 1886, embodied in section 3909 Kentucky Statutes, it was provided:

"It shall not be lawful to locate or maintain any pest-house or other place intended for the treatment of eruptive diseases, or diseases which are contagious or infectious, within the corporate limits of any incorporated city or town, or within a distance of one mile of the boundary line thereof. Any officer of any city or town, or other person, who shall violate the provisions of this act, or in anywise aid or abet therein, shall be deemed guilty of a misdemeanor, and, upon conviction thereof in any court of competent jurisdiction, shall be fined not less than five hundred dollars nor more than one thousand dollars, and be liable in damages to any person injured thereby, and, if wilfully done, such person or his heirs or representatives may recover punitive damages."

Under this statute, which is set out in the petition, the appellant brought suit, making parties defendant the City of Henderson, the mayor thereof, the members of the common council, and the keeper of the pest-house and his surety; alleging that they had wilfully maintained, and aided and abetted in maintaining a pest-house within one-half mile of the limits of the city, near appellant's residence; that they had sent persons afflicted with smallpox to the pest-house; that, by that means, that disease was communicated to her, to her damage, and that they had taken no steps, and provided no means, to prevent the spreading of the disease and the communication thereof to other persons.

After various motions to require appellant to elect which of the defendants she would proceed against, and whether

she would pursue a cause of action under the common law or under the statute, had been overruled, general demurrers to the petition were sustained.

On behalf of appellees it is claimed that the act of 1886 was repealed by implication by the act of June 14, 1893, for the government of cities of the third class, which provides (section 3290):

"The common council of each of said cities shall, within the limits of the Constitution of the State and this act, have power by ordinance . . . . To prevent the introduction of contagious diseases into the city, to make quarantine laws for the purpose and enforce the same within ten miles of the city. To establish and erect hospitals, almshouses, city prisons, workhouses, make regulations for the government thereof, and to acquire and hold land for the purpose either within or beyond the boundaries of the city."

The claim is that the act of 1886 is a limitation upon the power of the common council of cities of the third class, and, therefore, inconsistent with the grant of power in the charter, which recognizes no limitations except the Constitution and this act; and further, that the act of 1893 was intended to cover the whole subject of the rights, duties and liabilities of cities of the class named; and it is urged that, being so intended, it is a repeal of all prior legislation upon the subject, even if not in terms repugnant.

It was also urged that the intent of the Legislature to repeal the act of 1886 is further shown by the provisions of the acts in regard to the government of cities of the second and fourth classes—notably the latter, which provides (section 3490, Kentucky Statutes) that the boards of council of

Clayton v. City of Henderson, Etc.

said cities shall have power "to make regulations to pre-
vent the introduction or spreading of contagious or infec-
tious diseases in the city, pass quarantine laws for that
purpose and enforce the same within one mile of the city;
to establish and regulate hospitals or pest-houses in or
outside of the city; to make all regulations necessary to
secure the general health of the inhabitants of the city,
and to regulate and provide for the burial of the dead."

Undoubtedly, it needs no argument to show that the word
"hospitals" includes pest-houses. But it does not follow be-
cause the city council is authorized to establish hospitals and
other named institutions, most of which are proper and
some of which are necessary to be situate within the city
its, and for such purpose is also authorized to acquire prop-
erty within or without those limits, that, therefore, *all* may
be established within the boundary. On the contrary, the
preceding sub-section above quoted looks directly to the ex-
clusion of contagious diseases from the city limits; and it
would be a strained construction to hold that the adoption of
an act which was manifestly intended to authorize the depor-
tation of cases of contagious diseases from cities of the third
class accomplished the repeal of an act which forbids the
treatment of such cases within the limits, or in the vicinity
of cities of all classes. It is true that the Constitution (sec-
tion 156) provides that "All municipal corporations of the
same class shall possess the same powers and be subject to
the same restrictions;" and if the act of 1886 was applicable
allone to cities of the third class, there might be force in the
contention that the act for their government was intended
as a complete code of laws on the subject, and, therefore, re-

pealed all antecedent laws in relation thereto not embraced in its provisions. But the act of 1886 is not restricted in its application to cities of the third class; it embraces all municipalities, is a proper exercise of the general police powers of the State government to take measures for the security of the health of its citizens, and we do not think it repealed by the act of 1893 any more than the common law of nuisances thereby repealed as to nuisances established within the limits of cities of the third class. Whether the general act is repealed as to cities of the fourth class by the act for their government is not presented by this record, and need not be here considered.

It is further contended on behalf of the city of Henderson that, even if the act of 1886 was not repealed, the city can not be held liable, because the act does not make the corporation responsible, but only the officers who shall violate its provisions; and further, because the act complained of, being forbidden by statute, was beyond the scope of the powers of the municipality, was *ultra vires*, and therefore imposed no liability upon the corporation. But in the contention that the act imposed no responsibility, upon the corporation, the common law liability for establishing a nuisance which inflicts special damages upon an individual is overlooked; and as it is not necessary, that the word "nuisance" should be used in the pleading, but only that facts be stated which show the existence of the nuisance and the damage resultant therefrom, we think a cause of action has been stated against the city.

"A pest-house erected by town, municipal or county

authorities near the premises of another, injuring the health of his family or exposing them to contagious disease, is a nuisance for which an action will lie, and in the case of a county against the board or officers erecting it." Wood's Law of Nuisances, 2d Ed., sec. 66.

And in Haag v. Vanderburgh County, 60 Ind., 511 (28 A. R., 654), suit was brought against the board of commissioners of the county, which was held to be, in legal contemplation, the county; and the court held that it was a well-recognized rule that municipal corporations are liable for torts in certain classes of cases, including nuisances, in the same manner as natural persons; referring to 2d Hilliard on Torts (p. 273), Shear. & Red. on Negligence (sec. 120), 2d Dillon's Municipal Corporations (p. 766).

And in the contention that the acts alleged in the petition being unauthorized can not impose a liability upon the corporation, counsel seem to confuse the liability of a municipality for unauthorized contracts with its liability for torts committed by its officers acting under its authority in a matter within the scope of its corporate powers, but in regard to which its powers have been abused. Said Chief Justice Shaw in Thayer v. City of Boston (19 Pick., 513), cited with approval in McGraw v. Town of Marion (17 R., 1258-9), in which a number of other cases upon the subject are referred to:

The court is, therefore, of the opinion that the City of Boston may be liable in an action of the case where acts are done by its authority which would warrant a like action against an individual, provided such act is done by

the authority and order of the city government, or of
those branches of the city government invested with jur--
isdiction to act for the corporation upon the subject to
which the particular act relates, or where, after the act
has been done, it has been ratified by the corporation by
any similar act of its officers."

The rule in this respect is admirably stated in Dillon
on Municipal Corporations, 4th edition, section 968:

"To create such a liability, it is fundamentally neces--
sary that the act done which is injurious to others must
be within the scope of the corporate powers as prescribed
by charter or positive enactment (the extent of which
powers all persons are bound, at their peril, to know); in
other words, it must not be *ultra vires* in the sense that
it is not within the power or authority of the corporation
to act in reference to it under any circumstances."

And again in section 972:

"*Prima facie*, a municipal corporation is not liable for
the trespass and wrongful acts of its officers, though done
*colore officii;* but it will clearly be liable therefor where
the act, if not wholly *ultra vires* in the sense before ex-
plained, was expressly authorized by the governing body
of the corporation, or where, without special authority,
it was done by its officers in the scope of their duties
and employment, and has been ratified by the corpora-
tion."

The next question which arises is, whether the mem--
bers of the board of council are, by the act of 1886, made
liable for damages caused by the establishment of the
pest-house at a place within the statutory limits.

It seems quite clear that, in the absence of statutory provision, they would not be.

They are invested with legislative powers; and, in the action complained of, were doubtless exercising those powers. "Where the officers of a municipal corporation are invested with legislative powers, they are, of course, exempt from individual liability for the passage of any ordinance within their authority, and their motives in reference thereto will not be inquired into; nor are they individually liable for the passage of any ordinance not authorized by their powers; for such ordinance is void, and need not be obeyed." (1st Dillon's Municipal Corporations, 4th edition, section 313, and authorities there cited.)

The question remains, however, whether the statute under consideration was intended to create a liability against all classes of officers, both legislative and ministerial, of a municipal corporation, concerned in the establishment of a pest-house within the forbidden limits, or whether it applied only to ministerial officers who might participate therein. With some hesitation, on account of the absence of direct authority, we have reached the latter conclusion. It would seem improbable that the Legislature intended to create a statutory liability against a class of legislative officers, based upon action taken by them in that capacity, without any specific mention of the class to which they belonged, which had uniformly been held exempt from such liability. Such a construction would produce an interference with freedom of action by a legislative body, which ought not to

be lightly inferred when the language construed does not expressly provide therefor. It seems probable, rather, that the act was intended to apply to the establishment of such an institution by the executive or ministerial officers of the municipality, to persons who might establish private pest-houses, and to persons who might aid or abet either officers or persons so offending. To the class first named belongs the mayor, as well as the keeper of the pest-house; but not the surety of the pest-house keeper, merely by virtue of the fact that he is such surety. The mere execution of the bond by him as surety does not, in any fair or just sense, render him liable for aiding or abetting in the establishment or maintenance of the pest-house within forbidden limits.

There remains to be considered, therefore, only the question raised by the motions to require an election by appellant, viz., whether an action under the common law against the city for special damages caused to appellant by its maintenance of a nuisance can properly be joined with an action for damages against an officer under the statute in question.

Under the code (section 83), several causes of action may be united, if each affects all parties to the action, may be brought in the same county, may be prosecuted by the same kind of action, and if all of them be brought for injuries to person and property. The weight of authority seems to be that, where a specific proceeding is prescribed by the statute, it may not be joined with an action at common law; but that if a penalty or damages be made recoverable in a specific form of action, counts therefor

may be joined with counts for other causes of action in the same form, but not in different forms. (See authorities quoted in 11 A. & E. Encl., p. 1015m.) So it has been held that a common law action for negligence can not be joined with one for statutory negligence. (Kendrick v. Chicago & Alton R. R. Co., 81 Mo., 521. And see Felter v. Manville, 23 Kan., 191.)

On the other hand, it has been held that a statuory liability of a corporation and its common law liability may be enforced in the same action. (Bottomly v. P., H. & N. W. R. R. Co., 44 Mich., 542.)

But in the case at bar, it is sought to recover at common law against one defendant and under the statute against another. Under the averments of the petition, only compensatory damages can be recovered against the municipality, for the statutes, giving punitive damages does not apply to the corporation, and gross negligence is not averred. Under the statute, punitive damages are sought to be recovered against an individual, upon the allegation that the act done was willful. Without passing upon the question of whether or not averments might be made under which the city would be responsible in punitive damages, it is sufficient to say that such averments are not made in the petition in this case, and that we think a cause of action under the common law against one party for compensatory damages can not be properly joined with an action against another party for punitive damages, a right which is given under the statute, although both causes of action arise out of the same transaction.

For the reasons given, the judgment is reversed and cause remanded for further proceedings consistent with this opinion.