CASE 40—ACTION FOR DAMAGES AGAINST CITY FOR BUILDING A PEST
HOUSE NEAR PLAINTIFF'S PROPERTY—JUNE 18.

# City of Paducah v. Allen.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

MUNICIPAL CORPORATIONS—INJURY TO ADJOINING PROPERTY BY LOCA-
TION OF PEST HOUSE—MEASURE OF DAMAGES.

Held:   1. Under Constitution, section 242, providing that "munici-
pal and other corporations and individuals invested with the
privilege of taking private property for public use shall make
just compensation for property injured or destroyed by them,"
a city is liable for the injury to owners of adjoining prop-
erty from the location of a pest house.

2. In the absence of personal injury, the measure of damages, where
the establishment of the pest house is permanent, is the impair-
ment of the market value of the property.

3. Testimony as to the impairment of the value of the property
should be confined to witnesses who are acquainted with the
property and its market value, or the market value of similar
property in the vicinity, and the extent to which such market
value has been affected by the establishment of the pest house;
the proper inquiry being as to the reasonable market value
of the property but for the location of the pest house, and its
actual market value with the pest house located and maintained
as it is.

4. Testimony as to the prices for which adjoining property of the
same class and character sold just before and after the location
of the pest house is admissible.

5. Defendant can not complain of an instruction telling the jury
that, in order to find for plaintiff, they must believe there is
"a real probable danger" of the smallpox being carried through
the air from the pest house to plaintiff's premises.

6. The court should have instructed the jury, as requested by plain-
tiff, that the measure of damage is "whatever amount plain-
tiff's farm has been depreciated in market or salable value by
reason of the defendant's locating of and the maintaining of its
pest house, and carying on the same in proximity to his farm."

111  361
113  226
111  361
e118 130

111  361
122  217

111  361
125  437
e125 471

111  361
f136 739

R. T. LIGHTFOOT, FOR APPELLANT.

In 1897 the city of Paducah bought about twenty acres of land about three miles from its corporate limits and established a pest house thereon, about 250 yards from the land of the appellee at the nearest point, and over a half mile from his residence. From the time of the establishment of the pest house up to the institution of this suit the city has continuously used it for the treatment of smallpox patients; one year, 1898, there having been as many as thirty or forty patients during the year. The appellee claims $10,000 damages, and alleges that by reason of this house a fear is created that the disease will be carried to his land, and his friends will be prevented from visiting him. On a trial the jury gave the plaintiff $2,000 damages, from which verdict and judgment the city appeals.

The appellant contends that on the trial the court erred:

1. In admitting improper evidence in favor of appellee.
2. In refusing to admit competent and proper evidence offered by appellant.
3. In giving erroneous instructions to the jury.
4. In refusing to give proper instructions asked by appellant.

The city of Paducah, under its charter, is allowed:

"To establish and erect hospitals, &c., to make regulations for the government thereof and to acquire and hold land for that purpose within or beyond the city limits."

And our contention is:

*First,* That if the establishment of the hospital was a governmental act, there could be no liability accruing against the city on account of locating the pest house, nor in fact by reason of the consequences of either the exercise or non-exercise of the discretionary power of the city.

*Second,* Conceding for the sake of argument that there could be liability by reason of the location of such a hospital that then and there only can that be true when there is either *negligence* in the manner of doing the thing permitted or where there has been an abuse of the power conferred upon the city by the Legislature.

*Third,* That under no circumstances could there be a recovery against the city, unless it is averred and proven that a nuisance has been committed and exists on account of the conduct of the defendant.

### THE LIST OF AUTHORITIES QUOTED FROM.

Section 118 U. S. Supreme Court, p. 20, Callender v. Marsh, and Pick. (Mass.), 418; Griggs v. Foote, 4 Allen p. 195; Brown v. Lowell, 8 Met. (Mass.), 172; Benjamin v. Wheeler, 8 Gray,

City of Paducah v. Allen.

409; Denver v. Vernia, 8 Col., 399; Mattingly v. Plymouth, 100 Ind., 545; Detroit v. Beckham, 34 Mich., 125; Quincy v. Jones, 76 Ill., p. 231; 30 How. (U. S.), 135-149; Am. & Eng. Ency. of Law (1st ed.), pp. 1143-1144-1145-1146-1147-1148-1149-1150 and notes thereunder as well as citations of authorities; Cooley's Con. Lim., pp. 253-254-255; Am. & Eng. Ency. (1st ed.), vol. 16, p. 1000; Rex. v. Pease, 4 B. 7 ad., 30; Rex v. Morris, 1 B. & Ad., 441; Beckett v. Upton, 33 Eng. L. and Eq., 108; People v. New York Gas Light Co., 64 Barb. (N. Y.), 55; Carhart v. Auburn Gas Light Co., 22 Barb. (N. Y.), 297; People v. Platt, 17 John. (N. Y.), 295; s. c., 8 Am. Dec., 382; Harris v. Thompson, 9 Barb. (N. Y.), 350; Davis v. Mayor, &c., of New York, 14 N. Y., 506; Miller v. Mayor, &c., of New York, 109 N. S., 305; Hamilton v. New York, &c., R. Co., 9 Paige N. Y., 171; People v. Law, 34 Barb. (N. Y.), 494; Briesen v. Long Island, &c., R. Co., 831 Hun. (N. Y.), 112; Butler v. State, 6 Ind., 165; Danville, &c., R. Co. v. Com., 73 Pa. St., 29; Western Union Telegraph Co. v. Hewett, 4 Dist. of Columbia, 424; New Albany, &c., R. Co., 9 N. J. Eq., 526; Hinchman v. Paterson, &c., R. Co., 17 N. J. Eq., 75; Easton v. New York, &c., R. Co., 24 N. J. Eq., 49; Com. v. Boston, 97 Mass., 555; Davis v. Chicago, &c., R. Co., 46 Iowa, 389; Vason v. South Carolina R. Co., 42 Ga., 631; State v. Louisville R. Co., 86 Ind., 114; Atty. Gen. v. Evart and Booming Co., 34 Mich., 462; People v. Detroit, &c., Plank R. Co., 65 Mo., 325; Louis v. Behan, 28 La. An., 130; Randle v. Pacific R. Co., 65 Mo., 325; Irvin v. Great Southern Telephone Co., 37 La. An., 634; Ky. Law Rep., pp. 1342-1343, City of Paducah v. Allen, vol. 14 Am. & Eng. Ency. of Pl. & Pr., pp. 1114-1115; Morris v. Barrisford, 9 Misc. Rep. (N. Y. C. Pl.), 139; Rockwood v. Nelson, 11 Cush (Mass.), 221; Howland v. Vincent, 10 Met. (Mass.), 371; Dunbasch v. Hollister, 49 Hun. (N. Y.), 352; Martinowsky v. Hannibal, 35 Mo. App., 70; Fort Worth v. Crawford, 74 Tex., 404.

GREER & REED, ATTORNEYS FOR APPELLEE.

The preponderance of the evidence in this case shows that appellee's land on which he resides was worth $10,000 at the time of the erection of this pest house, and by reason of its erection it has been damaged from one-third to one-half of its market value, said house being located some 150 or 200 yards' from his line and within a quarter to a half mile of his tenant houses and his residence. That is near enough to create danger of the disease extending over his farm.

Complaint is made by counsel for appellant of "the instructions of the court to the jury," and of "improper evidence ad-

City of Paducah v. Allen.

mitted," and of a refusal of the court to admit proper evidence offered by appellant, but we think that this court will conclude that if errors have been committed on any of these points they are harmless ones that did not affect the verdict.

We contend that the petition in this case alleges facts necessary to show a *private nuisance* and injury therefrom to plaintiff and that the city must make "just compensation" for said injury; that there was no error of the court below which entitles the defendant to a new trial.

### AUTHORITIES RELIED ON BY APPELLEE.

Authorities on the time of filing bill of exceptions, &c.: Civil Code, sec. 334; Newport News, &c., v. Stavig, 17 Ky. Law Rep., 1113; Turner v. Johnson, 18 Ky. Law Rep., 202; Nance's Admr. v. Newport News & Miss. Valley R. R. Co., 13 Ky. Law Rep., 544; Meaux v. Meaux, 5 Ky. Law Rep., 548; Smith v. Blakeman, 8 Bush, 479.

Authorities as to nuisance and as to liability of corporation for damages, &c.: Present Constitution of Ky., sec. 242; Clayton v. City of Henderson, 20 Ky. Law Rep., 87; Woods' Law of Nuisance (2d ed.), sec. 66; Hoag v. Vanderburg Co., 60 Ind., 511; 2 Hilliard on Torts, 273; Shears & Red. on Negligence, sec. 10; 2 Dillon's Mun. Corp., 766, 17 Ky. Law Rep., 1258-1259; Dillon on Mun. Corp. (4th ed.), secs. 968, 972; Sutherland on Damages, secs. 1062-1063-1064-1066-1074 and pages 2365-2366, 3 vol., p. 2272, sec. 1037; Elizabethtown, &c., R. R. Co. v. Comb's, 10 Bush, 382; Rudolph v. Town of Bloomfield, 14 Am. St. Rep., 269; Allen v. City of Paducah, 20 Ky. Law Rep., 1342; Given's v. Van Studiford, 56 Am. Rep., 421; vol. 5, 1st ed., Am. & Eng. Enc., 38; 3 Blackstone Commentaries; Seafried v. Hays, 5 Ky. Law Rep., 369; City of Ludlow v. Detweiler, 20 Ky. Law Rep., 984; City of Henderson v. McClain, 19 Ky. Law Rep., 1451; Chicago v. Taylor, 125 U. S., 162; 106 Ill., 518; Bannon v. Rohmeiser, 17 Ky. Law Rep., 1378; Thompson on Corporations, vol. 5, secs. 6370, 6371; City of Mt. Sterling v. Johnson, 21 Ky. Law Rep., 1028; Present Ky. Const., sec. 13, Bill of Rights; Kate E. Hughes, &c., v. General Elec. L. & P. Co., &c., 21 vol. Ky. Law Rep., 1203.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

In 1897, the city of Paducah, having bought about 20 acres of land about three miles from its corporate limits, located and established a hospital upon it for the purpose

of treating eruptive diseases. The property acquired by the city lies on the east side of appellee's farm. The hospital on this tract is about 250 yards from the fence of appellee, and about one-half mile from his residence. After the establishment of this hospital, and after it had been maintained by the city for some two or three years, appellee brought this action to recover of appellant damages sustained to his farm by reason of the location and maintenance of the pest house. The hospital was established principally for the treatment of smallpox patients. It was the claim of the appellee that the locating of this pest house in such close proximity to his farm and to his residence tended to so impair their value—that is, their market value either for selling or renting purposes—as to practically diminish it by half. He asserted that his farm of 325 acres was worth $20,000. The proof introduced on his behalf shows that it was worth from $5,000 to $20,000, it taking a wide range according to the opinion of the various witnesses. The trial resulted in a verdict and judgment for appellee against the city for $2,500 damages.

Various grounds are urged here with much earnestness and force why the judgment should be reversed. We will state and dispose of them in the order of their importance. It is argued on behalf of the city that, inasmuch as it is required by the statute law of the State and by existing conditions to establish and maintain a hospital, which, under the mandate of the statute, it is compelled to establish within not less than one mile of the limits of an incorporated town or city, it can not be mulcted for having performed this duty, unless it has done so in a negligent or unskillful manner; that, having used care in the establishment of its hospital, it can not be liable to appellee, unless in the matter of the managing or conduct of the hospital,

it be done negligently, and thereby damages ensue to him.
It is contended that the action of establishing and main-
taining a pest house or other hospital is a governmental
function, which the courts will not interfere with nor con-
trol so long as due regard has been had to the law govern-
ing its establishment.    Prior to the adoption of the pres-
ent Constitution of this State, such may have been the
rule with regard to liability of municipalities.    However,
section 242 of that instrument provides:    "Municipal and
other corporations, and individuals invested with the priv-
ilege of taking private property for public use, shall make
just compensation for property taken, injured or destroyed
by them; which compensation shall be paid before such
taking, or paid or secured at the election of such corpora-
tion or individual before such injury or destruction."
Concerning this section this court has, in substance, held,
and in considering similar sections of State Constitutions
the United States supreme court has held, that a recovery
may be had in cases where private property has sustained
a substantial damage by making and using an improve-
ment that is public in its character by the municipality,
although the damage shall not be caused by a trespass or
an actual physical invasion of the owner's real estate.
City of Ludlow v. Detweiler, 20 Ky. L. R., 894 (47 S. W.,
881); City of Mt. Sterling v. Jephson (21 Ky. L. R., 1023);
(53 S. W., 1046); City of Henderson v. McClain, 102 Ky., 402,
19 Ky. L. R., 1451 (43 S. W., 700; City of Chicago v. Taylor,
125 U. S., 162 (8 Sup. Ct., 820; 31 L. Ed., 638). This principle,
or one quite analogous is also frequently applied in the case
of slaughter houses and similar institutions erected by
private individuals or private corporations in such close
proximity to another's premises that noxious odors, gases,
noises, and other elements tending to so disturb and en-

danger the lives or health or to discommode the comfort of
the occupant of the adjacent premises as to materially de-
preciate their value and use, and such have been held to be
actionable.    These actions are generally maintainable up-
on the theory that the maintenance of the particular insti-
tution or business is a nuisance.  So it has been held that
a pest house erected by a town, municipal or county
authorities near the premises of another, injuring the
health of his family, or exposing them to a contagious
disease, is a nuisance, for which an action will lie.    W  d,
Nuis., sec. 68.    See, also, Clayton v. City of Hendei  1,
20 Ky. L. R., 86 (44 S. W., 667).    We therefore con  le
that, where a city or other municipality erects and main-
tains a public institution, which, by reason of its nature,
endangers the lives or health of the occupants of adjacent
premises, as by subjecting them to contagious or infectious
diseases, it is not only a nuisance, but it is such an inva-
sion of the property rights of such adjacent holder as
amounts both to an injuring and a taking of property,
under the section, supra, of our State Constitution.    For
this the city must make compensation.

There was much evidence introduced on the trial as to
the extent of the danger to persons on appellee's premises,
it being the effort of the city to show that the danger was
more imaginary than real, and at best was so remote
and improbable as to be practically nil.    Many medical
witnesses of apparent good standing testified that, while
the disease was one both contagious and infectious, under
the systems of treatment now in use there was practically
no danger of the disease being contracted as much as 30
feet away from the subject when not confined in a close
room with it.    Indeed, some of them testified that in the
open air there was no danger of contracting the disease a.

distance of from four to six or eight feet, and practically
all of them united in saying that the danger was theoret-
ical or imaginary altogether from a distance of 150 feet.
They claim that such is the experience of their profession,
and such the opinion of their accepted authorities and writ-
ers.    On the other side the testimony of many citizens
was introduced to the effect that the very fact of the ex-
istence of the pest house in such close proximity to appel-
lee's premises had caused alarm and anxiety to all having
occasion to visit there or use them, made it difficult to keep
servants and workmen employed upon his place, estranged
his friends and visitors from his place and made the prop-
erty so undesirable in the public estimation as to materi-
ally decrease its vendable or market value.    And right
here we may say is the storm center of appellant's objec-
tions and contentions upon this appeal.    It is its insist-
ence that the establishing and maintenance of a pest house
in such proximity to other persons' property is not *per se*
a nuisance; that damages should not be allowed for any
injury unless it be shown to be actual and real; and that
injury, it is argued, should be, not the public's estimate
of the situation, but the real danger to which appellee
and those occupying his premises were subjected because
of the location and treatment of the diseased patients at
the pest house.    We have stated above that the location
of this pest house at the point and under the circumstances
indicated was such an invasion of the property rights of
the adjoining owner as to entitle him to recover for dam-
ages sustained.    Now what is the damage that he has
sustained?    Is it alone that he and the members of the
family are subjected to an actual danger of contracting a
loathsome and dangerous disease? Or is it the annoyance
and loss that he may sustain by reason of being deprived

of a portion of his premises or the use thereof, because by reason of its close proximity to the pest house his servants will not, and can not in safety, cultivate it to the line?    Or, is it the diminution of the salable value of his property in so far as that value has been affected?    So far as the facts in this case are concerned, it may be stated that there is no claim that the disease has actually been contracted by any member of appellee's family, and therefore we do not feel called upon to determine to what extent such a fact, had it existed, would have been actionable against the city.    If it be a fact, or be shown that the establishment of the pest house is permanent, it is the market value—that is, the selling and renting value of the owner's premises—that must be the measure of his damages.    They are as much his property as is the right to peaceably possess and personally enjoy it.    It is generally this market value that is the criterion in measuring damages when property has been injured that is adopted by the courts for lack of a more uniform, certain, and satisfactory one.    Therefore, to the extent that this market value has been impaired by the establishment of appellant's pest house at the point in controversy, appellee ought to be reimbursed by the city.    It is well known and universally recognized that smallpox is a very contagious, as well as a most loathsome and dangerous, disease; that its presence, though beyond the point where an expert would determine was that of actual danger, is a fact that naturally and almost universally excites alarm, uneasiness, and repulsion.    All avoid its neighborhood.    Therefore lands located in very close proximity to a place where this disease is rightfully, and at all and any times liable to be, treated,

and. from which proximity the disease is liable to infect the adjoining premises, creates in the mind of the public an aversion to that immediate locality. It necessarily results in the impairment of the value of the property within the affected district. It was proper, therefore, to submit the question to the jury to what extent appellee's property had been diminished in its market value by reason of the location and maintenance of this pest house, in connection with the question of probability of those upon appellee's premises becoming infected with the disease because of such enforced proximity to it.

In the course of the introduction of the evidence (and there was much of it of the character described without going into it in detail) many witnesses were allowed to testify for appellee without showing themselves to be qualified by a sufficient acquaintance with the property, or with the market value of that or similar property, to be able to testify thereof. They, however, were permitted to state to the jury that, in their opinion, the value of the property was diminished one-half. Some used the expression, "It would be worth nothing to me." All of this class of evidence should have been excluded, and appellee should have been confined to the testimony of such witnesses who showed that they were acquainted with the property, its value, or the value of similar properties in the same vicinity and their market values, and with the fact to what extent these market values had been affected by the location of the pest-house. The proper question would be: What was or would be a reasonable market value of the premises in question but for the location of the pest house, and what was its actual market value with the pest house located and maintained as it was? We are of the opinion that to the extent that the evidence

of the class above criticised was admitted (and it was of a material quantity, in our opinion) it was error in the court. On the trial, appellant offered to prove by various witnesses what adjoining properties of the same class and character had been sold for just before and since the location of the pest house, it being thus attempted to prove that the market value of this property had not been impaired to the extent indicated by the opinions of appellee's witnesses. Of course, market value is the price at which an article sells in the market. This price is fixed by sales actually consummated. Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than speculative opinions of witnesses; for, truly, here is where "money talks." Thus, in Suth. Dam., 799, it is said: "Evidence of actual sales of other similar property to that in question may be shown. It is competent to prove the value of other like property by which the property in question may be compared. It was held in an Illinois case, in an action to recover damages for the breach of a contract to convey land, that the plaintiff, in order to show the value of the premises in controversy, might prove, not only the worth of other adjacent property at or near the date of such contract, but even the value of land of a different quality, lying in the immediate vicinity, leaving it to the jury to determine the difference in value." We are of the opinion that it was error in the trial court to reject the testimony above mentioned.

The court gave the jury the following instructions: "Instruction No. 1. The court instructs the jury that the law of this State made it the duty of the city of Paducah to locate and build a suitable smallpox pest house in McCracken county, not nearer the city limits, however, than

one mile. And the court further says to the jury said
city had the legal right to locate, build and carry on the
smallpox pest house for the care of smallpox patients at
the place described and complained of in plaintiff's peti-
tion. Yet, while this is true, if the jury shall further be-
lieve from the evidence that by reason of the proximity of
said pest house to the tract of 325 acres of plaintiff's land,
where he lives, the same has been injured in value, the
law entitles him to recover in this action damages com-
mensurate with such injury, sufficient to compensate him
therefor, according to further instructions herein. In-
struction No. 2. The court further instructs the jury that
if you shall believe, from the evidence in this case, that
by reason of the nearness of said pest house to the said
land of the plaintiff, or any portion thereof, there is real
probable danger of the smallpox being communicated
through the atmosphere from said pest house to and upon
a portion or all of plaintiff's land, so as to really cause
any persons thereon to take the smallpox, or really plac-
ing them in danger of taking it, and that by reason of such
jeopardy the value of plaintiff's land is thereby lessened
to the extent of a part or the whole of the tract, you
will find for the plaintiff such sum in damages as you
may believe from the evidence such portion or all of the
tract has been so damaged or lessened in value by such
proximity of said pest house, not exceeding the sum
claimed in plaintiff's petition. Instruction No. 3. But the
court further instructs the jury that unless you shall be-
lieve, from the evidence in this case, that there is a real
probable danger of the smallpox being carried through the
air from said pest house to and upon said land of the
plaintiff, and persons thereon becoming infected therewith
and taking the smallpox, then, and in such case, there is

no legal cause of action against the defendant in this case; and you will find for the defendant, although you may believe from the evidence many persons other than the plaintiff are alarmed and express their fears of the small-pox anyhow. The meaning of this instruction is that you should not find for the plaintiff unless you shall believe from the evidence there is real probable danger that the air or the wind from the pest house will blow the small-pox onto and give it to people on Allen's said land. In-struction No. 4. The court further instructs the jury that, although you may believe from the evidence that there is a real probable danger of the smallpox being blown from the pest house onto and infecting persons on plaintiff's land nearest the pest house, yet if you shall fail to believe from the evidence there is any real danger of its being blown upon the still more remote portion of the tract, you will not consider such remote portion of the tract in making up a verdict for compensatory damages."

The appellant criticises the statement in the instruc-tions "that there must have been a real probable danger of the smallpox being communicated through the atmos-phere from said pest house and upon a portion of the plaintiff's land," etc. The court evidently intended by the term "real probable danger" to say that the probable dan-ger must be an actual fact, as distinct from one solely imaginary or apprehended. Upon the whole, we think the instructions, except as to measure of damages, are more favorable to appellant than it was entitled to.

It will be observed that the court failed to give to the jury a criterion or measure of damages in his instructions. An instruction on this point was offered by appellee as follows: "Instruction No. B. The court instructs the jury that, if they should find for the plaintiff, then that

the criterion or measure of damage is whatever amount plaintiff's farm has been depreciated in market or salable value by reason of the defendant's locating of and the maintaining of its pest house and carrying on the same in proximity to his farm." This instruction was objected to by appellant, and was refused by the court. We think it fairly embodies the law in this case applicable to this subject, and should have been given.

For the reasons indicated, the judgment is reversed, and cause remanded, with directions to award appellant a new trial under proceedings not inconsistent herewith.

Whole court sitting.

Judge Guffy dissents.

The instructions given are more favorable to defendant than it was entitled to. If the establishment of the pest house has caused a decrease in the value of the land, and that without regard to the fact whether or not there was real danger of persons taking the smallpox by reason of the establishment of the pest house, I do not think that the court erred to the prejudice of defendant as to the admission of the testimony. I think the judgment should be affirmed.