CASE 32.—ACTION BY FRED KETTERER'S ADMINISTRATOR
          AGAINST THE STATE BOARD OF CONTROL AND
          ANOTHER, FOR DAMAGES FOR THE NEGLIGENT
          DEATH OF APPELLANT'S INTESTATE.—Jan. 14.

# Ketterer's Admr. v. State Brd. of Control, &c.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

From a judgment of dismissal, plaintiff appeals.—
Affirmed.

1. States — Torts Committed by Employes — Liability.—Neither
   the state nor its officials managing state institutions as a
   governmental duty and without profit are liable for the wrong-
   doing of one, acting under them, who by his negligence in-

Ketterer's Admr. v. State Board of Control, &c.

flicts injury on another; but the liability therefor is on the person guilty of the negligence.

2. Same — States—Torts Committed by Employes — Liability.— Since the funds collected by taxation for the maintenance of a state lunatic asylum are collected for a charitable purpose, and since the asylum is managed by the state under a governmental duty and without profit, the funds cannot be diverted to pay judgments for injuries inflicted on inmates by employes when acting beyond the scope of their employment.

3. Same—States—Torts Committed by Subordinates—Liability.— The principle "respondeat superior" applies only to individuals and corporations employing servants in the furtherance of their private business, and a public officer is not responsible for the defaults of his subordinates in office, though they are selected by him and subject to his orders, and the board of control and the superintendent of a lunatic asylum are not liable for the acts of employes in the asylum, appointed by the board and the superintendent in the performance of theif duties.

J. FRANKLIN WALLACE and GEO. DENNY, for appellant.

1. If the charges in the pleadings are true, it seems to be a great hardship that one may be taken to a charitable institution and the persons in charge and control of the inmates can employ whomsoever they desire, however vicious they may be, and retain them, although such servants committed murder, and still the representatives of the deceased has no remedy under the law.

This question, nor one of similar import, has ever been submitted to this court for determination, and although the general doctrine that the State cannot be sued without it giver permission, yet the very act that brings this Board into life gives permission to all persons to bring suit against it; and certainly if the appellee J. S. Redwine is connected with his co-appellees in such a way as alleged that they knew the wrongs that were being perpetrated upon the deceased, they must respond to the representatives of those who are injured.

AUTHORITIES CITED.

Leavarell v. Western Lunatic Asylum, 28 Ky. Law Rep. 1129; Session Act March 9, 1906; Herr v. Central Ky. Asylum, 97 Ky. 458; Central Asylum v. Hanns, 23 Ky. Law Rep. 1016; Hanns v.

Ketterer's Admr. v. State Board of Control, &c.

Central Ky. Asylum, 103 Ky. 562; Galvin v. R. I. Hospital, 34 Am. Rep. 675.

GOURLEY, REDWINE & GOURLEY and JAS. BREATHITT and CHAS. H. MORRIS for appellees.

## POINTS AND AUTHORITIES.

1. A charitable institution established by the State and maintained through its aid for the benefit of its citizens, is not liable for damages for the negligent or malicious injury to an inmate of such institution by its servants or agents.

2. The defendant J. S. Redwine, is a public officer and was not responsible for the acts of his official subordinates. (Minor's Institutes 253; Story on Agency, sec. 319; Thropp on Public Officers, section 592; Hall v. Smith, 2 Beng 156, (9 E. C. L. 357); Robinson v. Sechel, 127 U. S. 507; Briscoe v. Lawrence, 2 Blatchf (U. S.) 121; Scott County v. Fluke, 34 Iowa, 317; Foster v. Mitts, 55 Miss. (77 30 Am. St. Rep. 504); White v. Mills, 64 Miss. 158; Hutchinson v. Brockett, 22 N. H. 252 (53 Am. Dec. 248); Murphy v. Comms. of Immigration, 28 N. Y. 134; Martin v. Mayor of Brooklyn, 1 Hill (N. Y.) 545; Bailey v. Mayor of N. Y., 3 Hill 531; (38 Am. Dec. 669); Wiggins v. Hathaway, 6 Barb (N. Y.) 632; Conwell v. Voorheis, 13 Ohio 523; (42 Am. Dec. 206); Bolan v. Williamson, 1 Brev. (S. C.) 181; Tracy v. Cloyd, 10 W. Va. 19; Dunlap v. Munroe, 7 Crauch (U. S.) 242; Bishop v. Williamson, 11 Me. 495; People v. Campbell, 82 N. Y. 247; Cunningham v. Moore, 55 Tex. 812; Railroad & Banking Co. v. Lamphy, 76 Ala. 357; Franklin v. Law, 1 Johns (N. Y.) 396; Seymour v. Van Slyck, 8 Wend. (N. Y.) 403; Senger v. Lynch, 8 Watts (Penn.) 453; McMillen v. Eastman, 4 Mass. 378; U. S. v. Kirkpatrick, 9 Wheat (U. S.) 720.)

3. A servant does not act within the scope of his duty in committing a wilfull and malicious or unlawful act. (Douglass v. Stevens, 18 Mo. 362; Brasher v. Kennedy, 10 B. M. 28; Hache v. Wabash Ry. Co., 119 Mo. 325; McCoy v. McKowen, 26 Mass. 487 (59 Am. Dec. 264); Wright v. Wilcox, 32 Am. Dec. 507; L. & N. R. R. Co. v. Rontt, 25 Ky. Law Rep. 887, 76 S. W. 513; Whittaker v. Eight Ave. Ry. Co., 51 N. Y. 295; Curtis v. Dineen, (Dak.) 30 N. W. 148; Richmond v. Long, 94 Am. Dec. 461; Hartrough v. St. Louis, 44 Mo. 479; Ogg v. Lansing, 35 Iowa 495; Brown v. Vinalhaner, 65 Me 402; Summers v. Davis County Court (Ind.) 53 Am. Rep. 512; Patrol v. Boyd, 120 Pa. 624; Williamson v. Louisville Industrial School of Reform, 95 Ky. 251.)

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted by appellant against appellees, the Kentucky State Board of Control and J. S. Redwine, superintendent of the Eastern Kentucky Lunatic Asylum, to recover damages for the loss of the life of appellant's intestate by reason of the negligence of the members of the board of control and J. S. Redwine, the superintendent of the asylum. A demurrer was filed and sustained to the petition, and appellant filed an amended petition, which, in substance, contains his real cause of complaint against appellees. It is as follows: "The plaintiff, by way of amendment to his original petition herein, says that he reiterates all the statements made therein, as much so as if copied herein verbatim. He alleges that the defendant J. S. Redwine is a superintendent of the Eastern Kentucky Lunatic Asylum, and that said Redwine, as such superintendent, and the Kentucky State Board of Control for Charitable Institutions, manage and control and employ the servants and agents of the Eastern Kentucky Lunatic Asylum for the Insane, located in the city of Lexington, and that the said defendants discharge said servants and employes upon their own volition. Plaintiff says that defendants, the Kentucky State Board of Control for Charitable Institutions and J. S. Redwine, superintendent of the Eastern Kentucky Asylum for the Insane, knew, or by the exercise of reasonable diligence could have known, of the vicious and outrageous tendencies of the servants who had been employed by them who were in charge of the plaintiff's decedent, Fred Ketterer, at the time of his death, and that the said defendants did know, or by the exercise of rea-

sonable diligence could have known, that the decedent, Fred Ketterer, was badly beaten and maltreated by said employes of the defendant before the 22d day of June, 1906, when he was cruelly beaten and bruised by them as alleged in his original petition, and although the defendants knew, or by the exercise of reasonable diligence could have known, that said servants were mistreating said Ketterer, they still retained them in their employ, and the said Ketterer lost his life through the gross negligence and carelessness of said defendants, all to this plaintiff's damage in the sum of $50,000.'' To this amendment a demurrer was also filed and sustained, and upon appellant's failure to plead further the court dismissed his action.

This court has several times passed upon similar questions. The policy of the law in this State is to the effect that neither the State nor its officials, such as are sued herein, are liable for the wrongdoing of one acting under them who, by his negligence, causes an injury to be inflicted upon another. All the authorities relieve the State and such officials from responsibility in such cases and place the responsibility upon those persons who commit the acts which are the direct cause of the injury.

Counsel for appellant rely for a reversal chiefly upon the cases of Herr v. Central Kentucky Asylum, 97 Ky. 458, 30 S. W. 971, 28 L. R. A. 394, 53 Am. St. Rep. 414; Central Kentucky Asylum v. Hauns, 64 S. W. 643, 23 Ky. Law Rep. 1016; Hauns v. Central Kentucky Asylum, 103 Ky. 562, 45 S. W. 890, 20 Ky. Law Rep. 246, and Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675. The questions determined in these cases are easily distinguished from the question involved in the case at bar. The first case mentioned was a proceeding to obtain an injunction to prevent

appellee from polluting a stream of water which ran through appellant's farm. Of the propriety of this, there can be no doubt. In polluting the stream of water that ran through appellant's farm, appellee decreased the value of the farm, and it amounted to the taking of his property without just compensation and due process of law, and it was an illegal act of the State and the officials in charge of the asylum. The Hauns cases were similar to the first case mentioned, except in the first there was a judgment against the asylum for polluting a stream of water which flowed through his premises, and the second case related only to the collection of the judgment by execution. The only case cited by appellant in which a similar question arose is Glavin v. Rhode Island Hospital, supra. In that case it was held that the hospital was liable to a paying patient for negligent treatment, although the hospital was administered largely as a charity, with income derived mainly from endowments and voluntary contributions. As will be observed, there is a material distinction between that case and the one before us. In that case the patient injured was paying for services rendered him, and the funds of that institution were of that character which could be directed and applied to the payment of a judgment, while the funds for the maintenance and support of the institution in the case at bar are appropriated by the State, and are made up of sums collected from the citizens of the State in the way of taxes. The purpose of the appropriations is purely a charitable one—that is, to take care of the poor, unfortunate ones confined in the institution—and is a governmental duty, and the institution is managed and controlled by the State with that sole end in view. Neither the State or officials derive any benefit or

profit from the funds appropriated for such purposes, and to allow them to be diverted from their sacred purpose to pay judgments for injuries inflicted by employes, when acting beyond the scope of their employment, would be contrary to law and public policy, and would in time wreck all the charitable institutions in the State, because in the control of these unfortunate people force must necessarily in many cases be used.  This is the reason of the law, and the reason why it has been so announced in many cases, and has been directly so held in this State.  See the cases of Williamson v. Louisville Industrial School of Reform, 95 Ky. 251, 24 S. W. 1065, 23 L. R. A. 200, 44 Am. St. Rep. 243, and Leavell v. Western Kentucky Asylum, 122 Ky. 213, 91 S. W. 671, 4 L. R. A. (N. S.) 269.  The facts in the first case above referred to were that Williamson, a boy 10 years of age, was placed in a school of reform, and it was alleged in the petition, in an action instituted by his next friend, that, without fault on the part of the boy, "one of the servants and employes of the appellee, and known by it to be incompetent and unfit for such service, struck and beat the appellant in such cruel and inhuman manner that he was caused great suffering in mind and body, and was permanently injured and damaged," etc. The lower court sustained a demurrer to this petition, and on an appeal it was affirmed by this court.  The second case referred to was where a young lady employe of the asylum was engaged in ironing clothes which belonged to the inmates of the asylum, and, when she was in the act of placing a garment between the rollers of the ironing machine, an irresponsible lunatic started the machine, which caught her fingers and injured her severely.  She alleged that this lunatic was incompetent and unfit to perform this

labor, which fact was known to those in charge of the asylum, but by their gross negligence this lunatic was permitted to perform this labor, and by their negli-gence caused the injury to her hand. The lower court sustained a demurrer to her petition and dismissed the action, and upon an appeal this court affirmed the judgment.

Appellant contends that Redwine, the superintend-ent of the asylum, is personally responsible for the injury and death of his intestate, because he, with the members of the board of control, appointed the sub-ordinate officials of the asylum, including the sub-ordinate who actually inflicted the injury which caused the death of his intestate. The principle ''re-spondant superior'' does not apply to public officers, such as are sued herein, but only applies to individ-uals and corporations who employ servants in the furtherance of their private business. A man in private life is not compelled to employ any servants to assist him in his business, and, in fact, is not bound to carry on any business; but, if he does transact business and employ servants to aid him, his responsi-bility for the acts of the servant will be governed by the rule stated, for they are employed for the pur-pose of increasing their employer's wealth, which is not so with reference to the officers sued herein. Their relations are very different. The officers sued in the case at bar were appointed to their positions for the purpose of the administration of a public benefit and necessity, and were directed and compelled by law to employ persons to assist in the proper performance of the functions of that office. To apply the rule that exists with reference to master and servant to such officials as appellee would do violence to the principle upon which the rule is based, and would have the

effect to prevent persons of responsibility from accepting such a position.  In 19 Am. & Eng. Ency. of Law (1st Ed.), p. 495, it is said: "A public officer is not responsible for the acts or defaults of his subordinates in office, although they are selected by him and subject to his orders"—and cites Story on Agency, section 319, and Thropp on Public Officers, section 592, and over 20 cases from foreign States supporting the text.  The under officers appointed by the board of control and Redwine did not act, in the performance of their duties, as the servants of or for the benefit of the board and Redwine, but were supposed to act for the good of the public in the furtherance of a charity, and therefore the board and Redwine are not responsible for their acts.  See United States v. Kirkpatrick, 9 Wheat, 720, 6 L. Ed. 199; McMillen v. Eastman, 4 Mass. 378; Seymore v. Van Slyck, 8 Wend. (N. Y.) 403.  Many other cases to the same effect could be cited.

In view of the authorities, we are of the opinion that the lower court did not err in sustaining the demurrer to appellant's petition.

For the reasons stated, the judgment of the lower court is affirmed.