## Zoeller, By, etc. v. State Board of Agriculture.

(Decided March 10, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Corporations—Performing Governmental Function—Not Liable for Tortious Act of Servant.—A corporation created by statute for the purpose of performing a governmental function, which has no stock, nor stockholders, and is owned entirely by the State, and its funds and profits required by statute to be expended in carrying out the purpose for which it was created, is not liable for the tortious acts of its officers or servants.

2. Corporations—Performing Governmental Function—Civil Contracts.—A corporate body performing a governmental function can be required to perform its civil contracts, the making of which were within the scope of its authority, and necessary for carrying out the purpose for which it was created.

3. Agriculture—State Board of—Not Liable for Tortious Act of Officer or Servant.—The State Board of Agriculture is an arm of the

State Government, and performing a public duty to all the citizens of the State, in the promotion of agriculture, stock breeding, and poultry raising, and the dissemination of enlightenment upon such subjects, and is not liable for the tortious acts of its officers or servants.

4.   Agriculture—State Board of—Property of Exempt From Taxation. —An institution, which, under our laws and Constitution, is one for which the Legislature may lawfully levy taxes for its maintenance, and property owned and used by it is exempt from taxation, is one performing a governmental function.

HENRY W. SANDERS for appellants.

A. J. CARROLL for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Loraine Zoeller, is an infant, five years of age, and sues by her guardian. The State Board of Agriculture is the appellee, and Rudolph Berliner was made a co-defendant with the State Board of Agriculture. The appellant, in her petition and amended petitions, alleges that the State Board of Agriculture is a corporation, created by an act of the General Assembly of the State of Kentucky, and that it has power to sue and be sued, contract and be contracted with, and possesses all the immunities, rights and privileges and franchises usually attached to a corporate body, and has power to conduct a yearly public exhibition, known as the Kentucky State Fair, on its grounds at Louisville, Kentucky, and that on September 16th, 1913, it was engaged in conducting the fair, and while the appellant was in the company of her father and mother, upon one of the public ways in the fair grounds, provided for the use of the pedestrians, that a horse ridden by a mounted musician broke away from under control and ran over the appellant, whereby she was struck with great and sudden force, crushed to the ground, trampled upon, bruised and crushed about the head, and her collar-bone broken. This mounted musician was one of the servants of Rudolph Berliner, who was under contract with the State Board of Agriculture to furnish music for the purposes of the exhibition, and for the benefit of the crowd present. It was further alleged that the horse was insufficiently broken to be used or brought into the fair grounds, where great numbers of people were congregating, and was a wild and vicious animal, and that the musician who was

mounted upon the horse was incompetent and unskillful, and incapable of controlling the horse, and that these facts were known to the appellee and its co-defendant, or, by the exercise of ordinary care could have been known to them, and that the injury she received was the direct result of the concurrent negligence of the State Board of Agriculture and Berliner, their agents and servants. It was further alleged that the State Board of Agriculture was giving a public exhibition, known as the Kentucky State Fair, which exhibit consisted of various shows, attractions, bands of music, races, and other things to attract the public, to which an admission fee was charged, and the plaintiff attended the exhibition upon the general invitation extended to the public, and paid the admission fee upon entering, and was a patron of the exhibition. The appellant sought to recover damages for her injuries. To this petition and its amendments the State Board of Agriculture offered a general demurrer. The demurrer was sustained, and the appellant declining to plead further, her petition was dismissed so far as it sought a recovery against the State Board of Agriculture.

It is contended that the demurrer should have been sustained upon two grounds, one of which is that the State Board of Agriculture is a governmental agency, performing a governmental function for all the public, and is simply an arm of the government of the State, and. for that reason cannot be made liable for the negligent or even malicious acts of its agents or servants. The other ground is that the defendant, Berliner, was an independent contractor, with whom the State Board of Agriculture had made a contract to furnish certain music for the exhibition, and had no control or choice of the servants of Berliner, and that Berliner only represented the will of the State Board of Agriculture as to the final result of his work, and that it had no control over the means by which he accomplished same, and for that reason it was not responsible for any negligence of him or his employes, which resulted in the happening alleged in the petition.

As to the contention that Berliner was an independent contractor the petition fails to show that he was such, and for that reason the demurrer upon that ground was not well taken.

It is an elementary principle of the law, however, that the State cannot be sued without its consent, neither can the State be sued for the negligent or malicious acts of any servant of any agencies of the State which perform governmental functions, nor can such agencies be sued for torts of its servants. The question for determination seems to be, as to whether or not the State Board of Agriculture, in conducting the Kentucky State Fair, exercises a governmental function. If it does, it is then not liable for the torts of its officers, agents, or employes. If it does not exercise a governmental function, then it is liable for the torts of its officers and agents.

This court, in the case of Rhea, Treasurer, v. Newman, 153 Ky., 617, made use of the following language: "The State Fair is one of the great institutions of the State. It was created for the purpose of improving and educating the people of the State along highly important lines, and no one will or can successfully contend, that the State Fair is not one of the most important and essential adjuncts of the State Government. * * * The State Fair is an established State institution, and, like its schools, and its penal and charitable institutions, must be maintained by the State, if it is to live."

The State Fair is a public purpose, within the meaning of the constitution, for which the money of the State may be appropriated by the Legislature. Ky. Live Stock Breeders' Association v. Hager, 120 Ky., 133.

This court, in the case of Norman v. Board of Managers, 93 Ky., 537, held that it was a public purpose, for which the money of the State might be appropriated, to properly represent the resources of the State in a fair to be held outside of the State. The purpose of the holding of a State Fair is to enlighten and educate all the people of the State in regard to the more advanced methods of agriculture, forestry, growing of livestock, and poultry, and to educate the people as to the most profitable kind of livestock to be raised, and the most suitable crops in which to till the soil, and the most advanced methods of doing same. It cannot be successfully contended that the enlightenment and education received by the people at the exhibitions given by the State Board of Agriculture are any less valuable, or the information received there any less worthy of being dissiminated by the State government, than the education given in the public schools of the State. The charitable institutions

of the State, such as the asylums for the insane, for taking care of the helpless, and feeble in mind, have, also, been held to be a proper function of the government, and neither the State, nor the boards created for the control of such institutions, are liable for the negligent or tortious acts of their servants. Williamson v. Louisville Industrial School of Reform, 65 Ky., 251; Leavell v. Kentucky Western Asylum, 28 R., 1129.

The tests ordinarily applied to determine whether an institution conducted by the State is one performing governmental functions are, whether or not taxes can be levied for its support, and whether or not property owned and used by it is exempt from taxation. In the case of Norman v. Board of Managers, and Rhea v. Newman, *supra,* it was distinctly held, that the State Fair was an institution for the maintenance of which taxes might be levied. In the case of Schwalk's Admr. v. City of Louisville, 135 Ky., 571, it was held by this court, that under Section 170, of the Constitution, which provides that public property used for public purposes shall be exempt from taxation, that waterworks, parks, wharves, and even bonds owned by a city, and applied to public uses, could not be subject to taxation. There are many cases in which this court has upheld this doctrine. City of Louisville v. Com'th, 1 Duvall, 295; City of Owensboro v. Com'th, 105 Ky., 344; Board of Council of Frankfort v. Com'th, 94 S. W., 648; Com'th v. City of Covington, 28 Ky., 36.

In the case of Ahern v. Iowa State Agricultural Society, 91 Iowa, 97, it was held that a body, such as the State Board of Agriculture is, in this State, not being a corporation for pecuniary profit, and being an arm or agency of the State organization, for the promotion of public good, and the advancement of the agriculture of the State; that it could not be held liable for damages for the wrongful acts of its officers or servants.

The Board of Agriculture was created by a statute adopted by the General Assembly, and it has no stockholders, and is composed of the Commissioner of Agriculture of the State, and the director of the experimental station at Lexington, Kentucky, and by seven members appointed by the Governor of the State, one of whom is selected from each appellate court district in the State, and while the act creating it provides, that it shall be a corporation, with right to sue and be sued, contract and

be contracted with, it is not an institution for pecuniary profit, and has no funds, except such as it holds in trust for the purposes for which it was created. The State annually appropriates for its use, the sum of $15,000.00, which it must use for the payment of premiums at the State Fair, and for no other purpose. It is empowered to conduct the State Fair, and to charge an admission fee for all the patrons of the fair, but the statute provides, that all of its funds shall be expended exclusively for the purpose of conducting the fair, and for no other purpose. If any profits are derived from the sale of privileges upon its grounds, and for the admissions, over and above the necessary expenses of holding the fair, this money must be used in maintaining the grounds and paying the expenses of other fairs to be held, and the legislative power of the State could at any time require the State Board of Agriculture to cover into the treasury of the State any funds which it has in its hands arising from any of the ways above mentioned. The State is the sole owner of all the property of the State Board of Agriculture. If the funds provided to maintain the State Fair could be subjected to the payment of damages for the negligent or tortious acts of the servants of the Board of Agriculture, it would be to appropriate them to purposes not authorized by the legislative authority, and the funds of such institutions, instead of going to carry out the purposes for which they were provided, would very soon be dissipated for purposes, altogether foreign to the purposes intended by the law, which provides for the State Fair, and for its maintenance.

The cases of City of Paducah v. Allen, 111 Ky., 361; Clayton v. City of Henderson, 20 R., 86; Hauns v. Ky. Central Asylum, 103 Ky., 562; Herr v. Central Lunatic Asylum, 97 Ky., 458, which have been relied upon to sustain the doctrine of liability of a public corporation, such as a municipal corporation, or one of the asylums for the insane for the torts of its servants, are not in point, because, in those cases the parties seeking relief based their complaints upon a violation of their property rights, and succeeded upon the ground, that the public corporations mentioned, were undertaking to take from the complainants real estate, without compensating them, or to destroy the value of their property, with-

out compensation, in violation of the provisions of the Constitution.

The case of Gross v. Ky. Board of World's Fair Managers, 105 Ky., 840, involved the question of the right of the complainant to have relief against the board, on account of a civil contract which it had with him, and which it had authority to make, in carrying out the power delegated by the legislative authority, and the court held in that case, that the board could be compelled to comply with its contract, provided the funds were in its hands to do so.

While municipal bodies, which are always arms of the State government, performing public functions, have been held liable for the acts of negligence of their servants in the maintenance of the public streets and highways, where their acts have resulted in damages to the citizens, this is an exception to the general doctrine, and is based upon the theory, that these municipal corporations are expressly authorized to care for the streets, and have expressly agreed to do so, for their own benefit. In no case, however, has a corporation, created by the State, for the performance of a governmental function, such as the boards controlling the charitable institutions, and institutions like the State Fair, and while held liable upon civil contracts, which they are authorized to make, and are necessary to carry out the purposes for which they were created, they have in no instance been held liable for tortious acts of their servants or employes.

The State Board of Agriculture is not a corporation for a pecuniary profit, and no person connected with it has any pecuniary interest in it. Such a corporation as this is not subject to the rules prescribed by law for private corporations, created and maintained for the benefit of their stockholders. The fact of its charging a fee for admittance to the exhibitions at the State Fair, is far from being conclusive upon the subject of its public character. The asylums for the insane, in this State, as said in the case of Leavell v. Western Ky. Asylum, *supra,* are corporate bodies, with power given to them by the statute, to sue and be sued, to contract and be contracted with, and they, likewise, receive patrons from other States, and charge therefor, and charge the estates of such citizens of the State, as may be confined therein, for their maintenance while there, yet this court has un-

deviatingly held, that they, and other such as they, are not liable for the tortious acts of their officers or servants. This court, in the case *supra*, saying: "We are of the opinion, therefore, that the right given appellee by the statute to sue, and to others to sue it, is to be taken in a qualified sense, and should not be so construed or extended, as to make it responsible to persons injured by reason of the misconduct or negligence of its inmates or employes."

The judgment appealed from is, therefore, affirmed.